1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
9                      AT TACOMA

10

11   TODD WALSH,                          CASE NO. 3:15-cv-05440-RJB

                      Plaintiff,          ORDER ON DEFENDANTS'
12                                         MOTIONS FOR SUMMARY
           v.                              JUDGMENT
13
     CONMED HEALTHCARE
14   MANAGEMENT, INC., et al.,

15                    Defendants.

16

17         THIS MATTER comes before the Court on two summary judgment motions,

18   consolidated for purposes of judicial economy: (1) Motion for Summary Judgment (Dkt. 53)

19   filed by Defendants Conmed Healthcare Management, Inc., Devin Allen, Jenni Zupfer, and Lilly

20   Beasley (the "Medical Provider Defendants"), and (2) County Defendants' Motion for Summary

21   Judgment (Dkt. 68) filed by Defendants Clark County, Sheriff Garry Lucas, and Jane/John Doe

22   ("County Defendants"). The Court has considered the pleadings filed in support of and in

23   opposition to the motions and the file herein. Dkts. 74, 75, 82, 84.

24

1

<u>BACKGROUND</u>

2     A. Facts.

3        This case begins like a play with two scenes: (1) an in-custody fight between Plaintiff and

4 another inmate, under circumstances where, Plaintiff alleges, the fight would have been

5 prevented with proper oversight, and (2) subsequent in-custody medical care, which Plaintiff

6 alleges was insufficient. On April 30, 2014, Plaintiff was booked into jail and transferred to the

7 Clark County Jail Work Center (JWC), a minimum security facility, about two weeks later. Dkt.

8 70 at ¶¶4, 5. JWC has four dormitories, which share a common room under direct surveillance.

9 To protect inmates' privacy, the restroom and shower area is not in the direct sight line of the

10 dormitories. Dkt. 75-1 at 35. Surveillance "rounds," which include a sweep of the dormitories,

11 are conducted at irregular intervals on at least an hourly basis. *Id*.

12        On June 6, 2014, according to Plaintiff, a fight between Plaintiff and another inmate

13 occurred after a verbal altercation, after which the other inmate approached Plaintiff in his bunk,

14 ripped Plaintiff's shirt off, and told Plaintiff, "Let's go right now. Come on let's go," and

15 beckoned Plaintiff to the bathroom to fight. Walsh Dep. at 59, 62, Dkt. 69-1 at 10, 13. Plaintiff

16 allegedly told the other inmate that he did not want to fight but followed him to the bathroom.

17 Plaintiff thought the fight had been initiated in the bathroom rather than the dormitory "so the

18 guards couldn't see." Walsh Dep. at 67, 68, Dkt. 69-1 at 16, 17. When asked what could have

19 prevented the fight, Plaintiff answered, "Bigger—glass on the windows . . . but no, other than

20 that, nothing[.]" Walsh Dep. at 187, 188.

21        That same day, June 6, 2014, Plaintiff sought medical attention and was brought from the

22 JWC to the main jail for treatment. Plaintiff received medical care from employees of Conmed,

23 an independent contractor engaged by Clark County to provide medical services to inmates. Dkt.

24

71-1 at 2-4. Plaintiff reported a prior chronic back injury from falling off a roof 12 years earlier that had "popped" earlier that day and had been exacerbated by the JWC's thin mattresses. Dkt. 75-1 at 55. Plaintiff also reported that the pain increased from lying but that "working makes it feel better." *Id.* Nurse Devin Allen conducted a visual and hands-on examination of Plaintiff's back, and he consulted with Physician Assistant Jenni Zupfer to obtain an order for ibuprofen. *Id.* Nurse Allen requested Plaintiff to file "kites" if additional medical attention were needed. *Id.*

Plaintiff sent "kites" to request medical assistance on three occasions, on June 8, 2014 ("broken nose and very bad back pain it's hard to breathe"), June 12, 2014 ("lower back pain. It is not getting better it really hurt's bad"), and June 25, 2014 ("back pain lower pain arms got num all night long"). Dkt. 75-1 at 31-33. Plaintiff does not recall if he filed a medical grievance to contest the quality of the treatment provided. Walsh Dep. at 78, Dkt. 75-1 at 24. *See* Dkt. 70-1 at 1-3. Plaintiff testifies that he was never given a copy of the inmate handbook, which details a description of the JWC's medical grievance process, a multi-layer administrative appeal process for inmates dissatisfied with their medical care. Walsh Dep. at 160, Dkt. 75-1 at 27.

On June 9, 2014, Nurse Allen again provided medical care to Plaintiff, who this time admitted that he had been in an altercation, which was the cause of a broken nose and the previously-reported back injuries. Dkt. 75-1 at 55. Plaintiff reported that the pain was an increase from the usual pain from a chronic back injury. Nurse Allen consulted with PA Zupfer, who authorized prescribing naproxen, an anti-inflammatory and pain-killer. *Id.* PA Zupfer also recommended a nasal x-ray consult. *Id.*

On June 10, 2014, PA Zupfer examined Plaintiff for his nasal fracture and back pain. PA Zupfer records that Plaintiff "was in an altercation with another inmate . . . [who] punched [Plaintiff] in the face and during the altercation he felt a "pop" in his back . . . eager to return to

work. He denies direct injury or trauma to his back during recent altercation." Dkt. 75-1 at 55, 56. PA Zupfer prescribed naproxen as well as robaxin, for pain relief. *Id*.

On June 16, 2014, Nurse Devin tended to Plaintiff's back pain. Plaintiff reported difficulty sleeping and that "something is wrong with my back, I haven't had this kind of pain in years." Dkt. 75-1 at 56. Nurse Devin, however, noted improved mobility from previous exams. With authorization of a PA, Nurse Devin prescribed naproxen and robaxin. *Id*.

On June 26, 2014, Nurse Lilly Beasley provided medical care to Defendant. Plaintiff reported persistent back pain following the altercation, numbness and tingling in her arms, and pain that was a "10/10." *Id*. After a physical examination of Plaintiff's back, with PA authorization Nurse Beasley extended the prescription for naproxen. *Id*.

Nurse Devin, Nurse Zupfer, and PA Zupfer all subjectively believed that the rest and pain medication was sufficient treatment for Plaintiff's back injury. Dkts. 54 at ¶10, 55 at ¶6, 56 at ¶14. However, Plaintiff testified that there was pressure to ignore Plaintiff's medical need for additional diagnostic testing, such as an MRI. According to Plaintiff, "[t]heir suggestion was just to shut my mouth and wait until I got out of there. That was by one of the nurses, a guy—a guy nurse, or—because I don't think I ever seen a doctor for that inside there." Walsh Dep. at 75, 76, Dkt. 69-1 at 18[1]. Plaintiff testified that he was told by "the captain . . . [to] keep your mouth shut" about the fight. Walsh Dep. at 75, Dkt. 75-1 at 22.

Plaintiff was released from the JWC on July 7, 2014. The next day, Plaintiff visited the ER, and an x-ray revealed an L-2 compression fracture, which Plaintiff was told "can be treated

---

[1] It appears Plaintiff inadvertently failed to attach page 76 of the deposition. *See* Dkt. 75-1 at 22, 23. From Plaintiff's argument elsewhere it appears that a guard may have also said something similar, Dkt. 75 at 19, but Plaintiff did not attach that portion of the deposition transcript, and it is not found elsewhere in the record.

at home with bed rest and pain medicine." Dkt. 58-4 at 6. Further, "a back brace (called TSLO) may be prescribed to reduce pain at the fracture site." *Id.* After additional appointments, including a diagnostic MRI, it was determined that Plaintiff was not a candidate for back surgery. Dkt. 75-1 at 4.

Plaintiff's expert, Robert A. Malaer, RN, MSN, CLNC, CLCP, CALM, has concluded that based on his review of the medical records, "Clark County Jail medical staff failed to adequately and effectively assess, diagnose, and treat [Plaintiff's] fractured L-2, which resulted in delayed treatment, unnecessary pain and discomfort, and loss of employment[.]" Dkt. 75-1 at 6. Mr. Malaer opines that the medical staff failed to order a lumbar x-ray and to provide prescribed inhalers for asthma management. *Id.* According to Mr. Malaer, "[m]ost compression fractures can be treated with bracing for 6 to 12 weeks, gradually increasing physical activity, and receiving physical therapy . . . [but Plaintiff] was not appropriately assessed, referred, or treated[.]" Dkt. 75-at 10.

B.  The Complaint.

Plaintiff has twice been granted leave to amend the complaint. In the Third Amended Complaint, the first several causes of action center on alleged constitutional violations. The First Cause of Action alleges constitutional deprivations under 42 U.S.C. § 1983 of Plaintiff's "right to freedom from cruel and unusual punishment; equal protection and failure to prevent violations by supervisors." Dt. 50 at ¶49. The Second Cause of Action, subtitled, "Unconstitutional Custom, Practice, or Policy (Municipal Liability Under *Monell*)," alleges that defendants Clark County, Conmed, and Sheriff Gary Lucas, "permit[ted] jail medical providers to disregard the medical needs of prisoners" and "discourage[d] the transfer of inmates . . . even when . . . necessary for medical care." Dkt. 50 at ¶¶66, 67. The Third Cause of Action is alleged against all

1   the defendants and is subtitled, "Failure to Supervise (Municipal Liability under *Monell*)." Dkt.

2   50 at 20.

3          The Third Amended Complaint also alleges state law claims. The Fourth Cause of Action

4   alleges violations by all the defendants of Washington's medical malpractice statute, RCW 7.70.

5   Dkt. 50 at ¶¶79-85. The Fifth Cause of Action alleges outrageous conduct by Sheriff Lucas and

6   the Medical Provider Defendants. *Id*. at ¶¶86-92.The Sixth Cause of Action alleges negligence

7   under three theories: general negligence by all the defendants, negligent infliction of emotional

8   distress by all the defendants, and negligent breach of a special duty owed by the County

9   Defendants. *Id*. at ¶¶96-100. Finally, the Seventh Cause of Action alleges that Conmed breached

10  its contract with Clark County by providing deficient medical care, which injured Plaintiff as a

11  third party beneficiary to the contract. *Id*. at ¶¶101-106.

12                                    <u>DISCUSSION</u>

13  **A.  SUMMARY JUDGMENT STANDARD**

14         Summary judgment is proper only if the pleadings, the discovery and disclosure materials

15  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

16  movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

17  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

18  showing on an essential element of a claim in the case on which the nonmoving party has the

19  burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of

20  fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

21  the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

22  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

23  metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a

24

1  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

2  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

3  *Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

4  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

5         The determination of the existence of a material fact is often a close question.  The court

6  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

7  e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect.*

8  *Service Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor

9  of the nonmoving party only when the facts specifically attested by that party contradict facts

10  specifically attested by the moving party. The nonmoving party may not merely state that it will

11  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

12  to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

13  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

14  be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

15     **B.  CLAIMS UNDER 42 U.S.C. § 1983**

16        1.  <u>Section 1983 claims generally.</u>

17         In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the

18  conduct complained of was committed by a person acting under color of state law, and that (2)

19  the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or

20  laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other*

21  *grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to

22  remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769

23  F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

24

1    To prevail on a claim of unconstitutional prison medical treatment, plaintiffs must show

2    "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct.

3    285, 50 L.Ed.2d 251 (1976). Plaintiffs must make two showings: (1) a "serious medical need,"

4    which is satisfied where the "failure to treat a prisoner's condition could result in further

5    significant injury or the unnecessary and wanton infliction of pain"; and (2) a deliberately

6    indifferent response to the injury by the defendant. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

7    2006). The second prong is satisfied when "prison officials deny, delay or intentionally interfere

8    with medical treatment, or it may be shown by the way in which prison physicians provide

9    medical care." *Id*. However, "if the harm is an "isolated exception" to the defendant's "overall

10   treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." *Id*.

11       2.   First Cause of Action: Denial of rights under 42 U.S.C. § 1983.

12       a.   *Medical Provider Defendants.*

13   Although the Medical Provider Defendants are not employees of Clark County, they do

14   not dispute that they acted under color of state law when providing medical care to Plaintiff, who

15   was in the custody of Clark County. *See generally*, Dkt. 53. *See West v. Atkins,* 487 U.S. 42

16   (1988)(private physician under contract with the state to provide medical services to state prison

17   inmates acts under the color of state law for § 1983 purposes). Therefore, the sole issue is

18   whether there is an issue of material fact as to whether the Medical Provider Defendants acted

19   with deliberate indifference to Plaintiff's medical needs.

20   In sum, an issue of material fact remains as to Nurse Allen, PA Zupfer, and Nurse

21   Beasley, but not Conmed. The record is sufficient to show a "serious medical need," where

22   Nurse Allen, PA Zupfer, and Nurse Beasley cared for Plaintiff during a period of time when

23   Plaintiff described back pain as a "10 out of 10" and "worse than any pain [Plaintiff] had

24

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 8

1  before." Dkt. 58-3 at 29-31. An issue of material fact remains as to whether Nurse Allen, PA

2  Zupfer, and Nurse Beasley acted with deliberate indifference when providing Plaintiff with

3  medical care. The circumstances suggest that medical treatment may have been delayed, which

4  may be actionable under § 1983. A "guy nurse" suggested that Plaintiff "shut [his] mouth and

5  wait until [he got] out of [JWC]" to seek additional medical diagnostic treatment, which,

6  according to Plaintiff's expert, resulted in unnecessary pain and discomfort.  It appears that there

7  was only one male nurse to fit that description, Nurse Allen. However, PA Zupfer shared shifts

8  with Nurse Allen and Nurse Beasley, and all three medics shared diagnostic information over a

9  period of several weeks, made similar assessments, and prescribed the same treatment, which are

10  sufficient circumstances for a reasonable jury to infer that all three uniformly delayed or

11  withheld medical assistance that may have mitigated Plaintiff's pain.

12         Conmed, a corporation, is treated like an individual for purposes of this motion, but

13  Plaintiff's Response provides no articulation of Conmed's individual liability for this cause of

14  action beyond *respondeat superior*, which is insufficient.

15         As to this cause of action, the Medical Provider Defendants' motion should be denied as

16  to Nurse Allen, PA Zupfer, and Nurse Beasley. The motion should be granted and this cause of

17  action dismissed as to Conmed.

18         *b.   County Defendants.*

19         The County Defendants do not challenge whether they acted under color of state law but

20  contend that no constitutional deprivation has occurred. The County Defendants make two

21  primary arguments: (1) Plaintiff did not exhaust his administrative remedies, which are outlined

22  in a three or four step grievance appeal process found in Clark County's inmate handbook; and

23

24

1  (2) Plaintiff had access to a safe and secure environment and medical care, and he cannot make a

2  showing to the contrary. Dkt. 68 at 14-23.

3          Plaintiff may not have exhausted administrative remedies found in the inmate handbook,

4  but the Court expressly declines to reach the issue. Plaintiff undisputedly filed several medical

5  kites, but from the record—and based on Plaintiff's Response brief—it is apparent that Plaintiff

6  conflates and confuses the medical kites with Clark County's grievance appeal process. Giving

7  Plaintiff the benefit of all inferences, however, Plaintiff may not have been on notice of the

8  grievance appeal process, which could render exhaustion an improper basis for dismissal.

9          The fatal problem for Plaintiff is that Plaintiff articulates no triable issue of fact as to the

10  County Defendants individually, and this Court finds none. Plaintiff makes no argument about

11  how the conduct of Sheriff Lucas violated Plaintiff's rights. At best, Sheriff Lucas promulgated a

12  surveillance supervision "rounds" policy or practice, but that theory, even if defensible, is

13  subsumed by the Third Cause of Action, subtitled, "Failure to Supervise (Municipal Liability

14  Under *Monell*)." *See* § B(4) *below*. It appears that Plaintiff attempts to advance a theory of

15  vicarious liability as to Clark County, which is an inadequate basis for municipal liability, and

16  Clark County liability under *Monell* was pleaded as a separate cause of action. *See* §§ B(3) and

17  (4).

18          As to this cause of action, the Clark County Defendants' motion should be granted and

19  the cause of action dismissed.

20          3.  <u>Second Cause of Action: Unconstitutional custom, practice, or policy (municipal
               liability under *Monell*).</u>

21
22  The Third Amended Complaint alleges the Second Cause of Action against Conmed and

23  the County Defendants. It is alleged that these defendants "permit[ted] jail medical providers to

24

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 10

1 disregard the medical needs of prisoners" and "discourage[d] the transfer of inmates . . . even

2 when . . . necessary for medical care." Dkt. 50 at ¶¶ 66, 67.

3       Plaintiff points to no custom, practice, or policy as to any of the named defendants in

4 either Response brief, and the bare allegation in the complaint is not enough. As to the County

5 Defendants, Plaintiff's Response brief cites to relevant law, then summarily states, "Here the

6 pain was an "10 out of 10", The worst pain I have ever had, Allen Dep. Ex. 1. [*sic*]" Dkt. 74 at

7 19, 20. Presumably the "10 out of 10" refers to Plaintiff's back pain while in custody, but even if

8 true, a description of Plaintiff's injury is not an articulation of a custom, practice, or policy. As to

9 Conmed, Plaintiff's Response only recites relevant case law without connecting the law to any

10 specific issues of fact. Dkt. 75 at 13-15.

11       Defendants' respective motions for summary judgment should be granted as to this cause

12 of action, which should be dismissed against all defendants.

13       4.   Third Cause of Action: Failure to supervise (municipal liability under *Monell*).

14       Plaintiff alleges this cause of action against all defendants. Dkt. 50 at ¶¶71-74.

15            *a.   Medical Provider Defendants.*

16       This cause of action should be dismissed against the Medical Provider Defendants, where

17 Plaintiff's Response makes no cogent argument that could direct the Court to an issue of material

18 fact. *See* Dkt. 74 at 15. The Response is nonsensical, and the Court will not attempt to construct

19 coherent arguments on Plaintiff's behalf.

20       As to this cause of action, the Medical Provider Defendants' motion should be granted

21 and this cause of action dismissed.

22

23

24

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 11

1                    b.   *County Defendants.*

2          Plaintiff's Response argues that "there was a lack of supervision at the [JWC] to prevent

3   assaults from occurring." Dkt. 74 at 14. The Response then states that "[Plaintiff] testified as to

4   the lack of supervision which allowed him to be assaulted . . . [and] that he was discouraged

5   from reporting the assault to the guards." *Id.*

6          This cause of action should be dismissed against the County Defendants. As to Clark

7   County, Plaintiff makes no effort to identify an issue of material fact as to a supervisory policy,

8   practice or custom, nor does Plaintiff articulate how Clark County was deliberately indifferent.

9   Dkt. 75 at 14-16. The fact of Plaintiff's injury sustained while in custody does not necessarily

10  give rise to municipal liability. Plaintiff's argument makes no explicit mention of Sheriff Lucas.

11  *Id.* On this basis alone, the cause of action should be dismissed. However, stretching the record

12  cited to in Plaintiff's briefing to a logical conclusion beyond the Response itself, the Court notes

13  that even if Sheriff Lucas had increased supervision by, for example, increasing the frequency of

14  surveillance "rounds" at the JWC—which is not a jail, and thus by design has less supervision—

15  Plaintiff cannot show that the County Defendants'  (in)frequency of rounds caused Plaintiff's

16  injuries. Plaintiff testified to taking active steps to conceal the fight from supervision, by

17  deliberately fighting in a place Plaintiff knew to be hidden from surveillance rounds.

18         As to this cause of action, the County Defendants' motion should be granted and this

19  cause of action dismissed.

20  **C.  STATE LAW CLAIMS**

21         1.  <u>Fourth Cause of Action: Violation of RCW 7.70.</u>

22         Plaintiff alleges this cause of action against all defendants. Dkt. 50 at ¶¶ 79-85.

23                  a.   *Medical Provider Defendants.*

24

1        Plaintiff argues that care provided by the Medical Provider Defendants fell below the

2  "reasonable prudence" standard for health care practitioners under RCW 7.70.040. Dkt. 75 at 18.

3  Given the facts that may give rise to liability under 42 U.S.C. § 1983, *see* § B(2)(a) *above*, an

4  issue of material fact remains as to whether Nurse Allen, PA Zupfer, and Nurse Beasley violated

5  their duty of care. As an "entity . . . employing" Nurse Allen, PA Zupfer, and Nurse Beasley,

6  Conmed can be liable for employees' conduct, so the same set of facts precludes summary

7  judgment in favor of Conmed. RCW 7.70.020(3).

8        As to this cause of action, the Medical Provider Defendants' motion should be denied.

9           *b.   County Defendants.*

10        The Fourth Cause of Action alleges that the County Defendants "failed to supervise and

11  provide a safe and secure environment for inmates . . . by allowing [Plaintiff] to be viciously

12  beaten while in their custody and control." Dkt. 50 at ¶ 84. *See id*. at ¶¶79-83, 85. RCW 7.70 is a

13  broad statute, applying to "all civil actions and causes of action, whether based on tort, contract,

14  or otherwise, for damages for injury occurring as a result of health care." RCW 7.70.10. "Health

15  care" can be defined as, "The prevention, treatment, management of illness and the preservation

16  of mental and physical well-being through the services offered by the medical and allied health

17  professions." *Branom v. State*, 94 Wn.App. 964, 969 (1999). However, the statute is not so broad

18  as to cover the conduct alleged, namely, the County Defendants' alleged failure to supervise and

19  secure a safe environment, and no foreseeable amendment can cure this defect.

20        As to this cause of action, the County Defendants' motion should be granted and the

21  cause of action dismissed.

22        2.  <u>Fifth Cause of Action: Outrage.</u>

23        Under Washington law, the tort of Outrage requires proof of three elements: (1) extreme

24

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 13

1   and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual

2   result to plaintiff of severe emotional distress. *Reid v. Pierce County,* 136 Wn.2d 195, 202

3   Whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it "is initially for

4   the court to determine if reasonable minds could differ." *Dicomes v. State,* 113 Wn.2d 612, 630

5   (1989). The conduct "must be 'so outrageous in character, and so extreme in degree, as to go

6   beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

7   a civilized community.'" *Grange Ins. Ass'n v. Roberts*, 179 Wn.App. 739, 754 (2013).

8            *a. Medical Provider Defendants.*

9            Plaintiff's Response does not articulate issues of material fact as to each Medical

10   Provider Defendant, but rather quotes deposition transcripts at length and then concludes that "a

11   jury could use the evidence related above to conclude that Defendants' conduct was outrageous."

12   Dkt. 75 at 18-22.

13           Setting aside the fact that Plaintiff makes no effort to articulate issues of material fact as

14   to each one of the Medical Provider Defendants, the fatal problem for Plaintiff is that no

15   reasonable trier of fact could find the conduct of the Medical Provider Defendants to be

16   outrageous, as that term is legally defined. At best, Plaintiff could argue that the Medical

17   Providers Defendants should have done more, for example, by requesting an x-ray for his back

18   injury, but Plaintiff does not dispute that the Medical Provider Defendants cared for Plaintiff on

19   five different occasions, prescribing him pain relievers and muscle relaxants and ordering a nasal

20   x-ray. Plaintiff's medical care sharply contrasts with conduct considered outrageous by other

21   courts. *See, e.g., Doe v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 141

22   Wn.App. 407 (2007) (defendant failed to report child abuse); and *Seaman v. Karr*, 114 Wn.App.

23

24

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 14

1   665, 685-88 (2002) (defendant wrongfully accused plaintiffs of being murder suspects and told

2   them would go to jail on murder charges if not cooperative).

3        As to this cause of action, the Medical Provider Defendants' motion should be granted

4   and the cause of action dismissed.

5        *b. County Defendants.*

6        Plaintiff's Response describes the alleged deficiencies in Plaintiff's medical care,

7   specifically, the failure to take diagnostic measures, then argues that "[a] jury could use the

8   evidence related above to conclude that Defendant's conduct was outrageous." Dkt. 74 at 21.

9   The Response does not bother to point to an issue of material fact specific to Clark County and

10  Sheriff Lucas, nor does the argument proffered appear applicable to these defendants, who did

11  not individually provide medical care. Even if the argument applied to the County Defendants,

12  the cause of action should be dismissed for the same reason as for the Medical Provider

13  Defendants above, namely, because not ordering an x-ray or MRI, considered in light of the

14  balance of medical care provided, could not amount to outrageous conduct to any rational trier of

15  fact.

16       As to this cause of action, the County Defendants' motion should be granted and the

17  cause of action dismissed.

18       3.  <u>Sixth Cause of Action: Negligence.</u>

19       *a.  Medical Provider Defendants.*

20       "[W]henever an injury occurs as a result of health care, the action for damages for that

21  injury is governed exclusively by RCW 7.70." *Branom*, 94 Wn.App. at 969. Plaintiff elsewhere

22  alleges violations of RCW 7.70, but this cause of action, which alleges several theories of

23

24

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 15

negligence against individuals whose conduct falls within the definition of "health care," is

preempted by statute.

As to this cause of action, the Medical Provider Defendants' motion should be granted

and the cause of action dismissed.

    *b. County Defendants.*

Plaintiff's argument is intertwined with other causes of action. *See* Dkt. 74 at 25-29. It

appears that Plaintiff argues that Clark County breached its duty as custodian to care for Plaintiff

through its proxy, the Medical Provider Defendants, "because the duty to keep the prisoner in

health is nondelegable." *Id*. at 26. According to Plaintiff, "a jury could find the County

responsible for establishing policies regarding the treatment and care of inmates that contributed

to [Plaintiff's] injuries." *Id*. Plaintiff's argument regarding Sheriff Lucas is similar: Sheriff Lucas

"is never permitted to abdicate responsibility for ensuring proper assessment of injured inmates .

. . [including] policies, protocols, scope of practice . . . timely treatment for serious medical

conditions." Following these arguments, Plaintiff's Response includes a long portion of PA

Zupfer's deposition, where she states that time with patients was at times truncated by jail

employees and that the decision to seek outside care required approval of the institution's

medical director. *Id.* at 27.

The County Defendants' briefing addresses the duty owed to Plaintiff to maintain a

reasonably safe environment, e.g., an environment without dorm fighting, but the briefing does

not address the County Defendants' liability with respect to Plaintiff's medical care. *See* Dkt. 68

at 23, 24. *See generally*, Dkt. 84.

Plaintiff has made no showing that Clark County owed Plaintiff a duty as a matter of law.

In negligence actions against government entities, Washington courts follow the public duty

doctrine. *See Cummins v. Lewis Cnty.*, 156 Wn.2d 844 (2006). Under this doctrine, "no liability may be imposed for a public official's negligent conduct unless it is shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general." *Id.* Plaintiff has not made this showing. Plaintiff's arguments, which the Court generously construes, at best point to general obligations for Clark County. The Third Amended Complaint alleges an exception to the public duty doctrine, the "special relationship exception," but this exception applies where "(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff." *Babcock v. Mason Cnty. Fire Dist. No. 6*, 144 Wn. 2d 774, 784 (2001). While Plaintiff certainly relied on Clark County for his medical care, there is no showing that Plaintiff was set apart or given express assurances, and Clark County "cannot be liable merely for allegedly breaching its general responsibilities to supervise[.]"*Fuller v. Lee*, 2014 WL 6982519, at *13 (W.D.Wash. 2014)

As to Sheriff Lucas, Plaintiff's briefing fails to establish an issue of material fact as to causation. The Response does nothing more than argue, without specifics and support from the record, that policies and practices promulgated by Sheriff Lucas injured Plaintiff.

As to this cause of action, the County Defendants' motion should be granted and the cause of action dismissed.

4.  Seventh Cause of Action: Third party beneficiary breach of contract.

The Third Amended Complaint alleges that Conmed and Clark County were parties to a contract under which Conmed agreed to provide medical services to inmates "in accord with standards promulgated by Clark County and Washington State law," which Conmed breached by

not providing adequate medical care to Plaintiff. Dkt. 50 at ¶¶101-106. This cause of action is alleged against Conmed only. *Id.*

This cause of action is explicitly preempted by statute. RCW 7.70.10. *Branom v. State*, 94 Wn.App. 969. Plaintiff also fails to articulate any provision of the contract that could indicate Plaintiff has standing as a third party.

As to this cause of action, the Medical Provider Defendants' motion should be granted and the cause of action dismissed.

**D.  CLAIMS AGAINST AS YET UNIDENTIFIED DEFENDANTS, JOHN AND JANE DOE**

Use of "John and Jane Doe" to identify defendants is generally disfavored, but it is permissible when pleaded to assist with identifying unknown defendants with discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980). Plaintiff has been given an opportunity to conduct discovery, which has closed, but Plaintiff makes no showing that proceeding with unnamed defendants is warranted at this late stage of the litigation. These defendants should be dismissed.

* * *

THEREFORE, it is HEREBY ORDERED that the Motion for Summary Judgment (Dkt. 53) filed by Defendants Conmed Healthcare Management, Inc., Devin Allen, Jenni Zupfer, and Lilly Beasley is GRANTED IN PART and DENIED IN PART. For Devin Allen, Jenni Zupfer, and Lilly Beasley, the motion is granted and the case dismissed except as to the First Cause of Action (violation of 42 U.S.C. § 1983) and the Fourth Cause of Action (negligence under RCW 7.70). For Conmed, the motion is granted and the case dismissed except for the Fourth Cause of Action (negligence under RCW 7.70).

1    IT IS FURTHER ORDERED that the County Defendants' Motion for Summary

2 Judgment (Dkt. 68) filed by Defendants Clark County, Sheriff Garry Lucas, and Jane/John Doe

3 is HEREBY GRANTED and  all claims dismissed against these defendants.

4    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

5 to any party appearing *pro se* at said party's last known address.

6    Dated this 28th day of September, 2016.

7

8

9

10                    ROBERT J. BRYAN
                      United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 19